IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **TERRANCE PIERCE,** | * | |
| | * | |
| Plaintiff, | * | |
| | * | **Civil No. TMD 15-891** |
| v. | * | |
| | * | |
| | * | |
| **CAROLYN W. COLVIN,** | * | |
| **Acting Commissioner of Social Security,** | * | |
| | * | |
| Defendant. | * | |
| | ************ | |

**MEMORANDUM OPINION GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Plaintiff Terrance Pierce seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying his applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 13) and Defendant's Motion for Summary Judgment (ECF No. 14).[1] Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that he is not disabled. No hearing is necessary. L.R. 105.6. For the reasons that follow, Defendant's Motion for Summary Judgment (ECF No. 14) is **GRANTED**, Plaintiff's Motion for Summary Judgment (ECF No. 13) is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

---

[1] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

# I

## **Background**

Plaintiff was born in 1961, has an eighth-grade education, and previously worked as an automotive mechanic, furniture mover, wrecking mechanic, construction worker, and laborer. R. at 25, 37-43.  Plaintiff applied for DIB and SSI on March 30, 2012 (with a protective filing date of March 2, 2012), alleging disability beginning on April 1, 2009, due to bad knees, carpal tunnel syndrome, and severe arthritis in his ankles and feet.  R. at 168-83, 215, 227.  The Commissioner denied Plaintiff's applications initially and again on reconsideration, so Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  R. at 90-134, 138-47.  On July 16, 2014, ALJ Robert W. Young held a hearing in Baltimore, Maryland, at which Plaintiff and a vocational expert ("VE") testified.  R. at 33-59.  At the hearing, Plaintiff amended his alleged onset date of disability to the date of his 50th birthday.  R. at 36.  On September 24, 2014, the ALJ issued a decision finding Plaintiff not disabled "from April 1, 2009, through the date of [the] decision." R. at 26.  Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on January 23, 2015.  R. at 1-5, 10, 288-93.  The ALJ's decision thus became the final decision of the Commissioner.  *See* 20 C.F.R. §§ 404.981, 416.1481; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On March 27, 2015, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision.  Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment.  The case subsequently was reassigned to the undersigned.  The parties have briefed the issues, and the matter is now fully submitted.

II

**Summary of Evidence**

A.   **Opinion Evidence**

   1.   **Michael T. Sullivan, M.D.**

Dr. Michael Sullivan treated Plaintiff every three months at Mission of Mercy for about three years beginning in December 2010. R. at 24, 49-50, 298-337, 372-91. On July 4, 2011, Dr. Sullivan opined on a "Medical Report Form 402B" (R. at 332-35) that, because of his joint pain and right knee pain, Plaintiff could stand for one hour and walk for one hour in an eight-hour workday. R. at 332-33. He could sit and reach without restrictions, but he could never climb, bend, squat, or crawl. R. at 333. According to Dr. Sullivan, Plaintiff could lift less than ten pounds, and he could use his hands for simple grasping, pushing, and fine manipulation. R. at 333. Dr. Sullivan also opined that Plaintiff had marked restriction in activities of daily living; marked difficulties in maintaining social functioning; no difficulties in maintaining concentration, persistence, or pace; and repeated (three or more) episodes of decompensation. R. at 334. Dr. Sullivan further opined that Plaintiff's medical condition limited his ability to work from June 27, 2011, to June 27, 2012. R. at 335.

On April 4, 2012, Dr. Sullivan opined on a "Medical Report Form 500" (R. at 336-37) that, because of Plaintiff's right knee pain and instability, he could stand for one hour, walk for one hour, and reach for two hours in an eight-hour workday. R. at 336. Although he could sit without restrictions, Plaintiff could never climb, bend, squat, or crawl. R. at 336. Dr. Sullivan opined that Plaintiff could lift at most ten pounds. R. at 336. According to Dr. Sullivan, Plaintiff had an impairment or combination of impairments that interfered with his ability to function independently, appropriately, and effectively on a continuous basis. R. at 337. Plaintiff had

moderate restriction in daily living activities, mild difficulty in maintaining social functioning, and moderate restriction in maintaining concentration that limited his ability to work from April 4, 2012, to April 4, 2013.  R. at 337.

### 2.  State Agency Medical Consultants

On July 6, 2012, a state agency medical consultant, S.K. Najar, M.D., assessed Plaintiff's physical residual functional capacity ("RFC").  R. at 95-97, 105-07.  Dr. Najar opined that Plaintiff could (1) lift and/or carry twenty pounds occasionally and ten pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling.  R. at 95-96, 105-06.  Plaintiff frequently could balance and occasionally could stoop, kneel, crouch, crawl, and climb ramps and stairs (but never ladders, ropes, or scaffolds).  R. at 96, 106.  Plaintiff had no manipulative, visual, or communicative limitations, but he was to avoid all exposure to hazards, such as machinery and heights.  R. at 96-97, 106-07.  On January 16, 2013, another state agency consultant, Nisha Singh, M.D., expressed the same opinion about Plaintiff's physical RFC.  R. at 116-18, 126-28.

### B.  Hearing Testimony

#### 1.  Plaintiff's Testimony

The ALJ reviewed Plaintiff's testimony in his decision:

> [Plaintiff] testified that he stopped working because he was experiencing constant pain in his hands, knees and wrists, and he stated that he is currently unable to work because of constant pain in his knees, ankles, feet and hands. [Plaintiff] elaborated that this pain prevents him from sitting for more than 15 minutes, standing for more than 5 minutes, walking for more than three to five minutes and lifting more than five to ten pounds. [Plaintiff] further stated that he gets dizzy and experiences back pain if he bends over, shoulder pain prevents him from reaching overhead, he could not bend over to pick something up off the floor if he dropped it and that his hands cramp when he is writing or picking things up. He elaborated that in order to get a coin [off] a table, he would have to slide it, as

> opposed to picking it up. Despite reporting some trouble fastening buttons, [Plaintiff] admitted that he is able to bathe, dress and shave himself, as well as wash his hair and tie his shoes. [Plaintiff] stated that he resides in the basement of a friend's three-story townhouse, and admittedly climbs the stairs at least once a day and is able to reach in front. In addition to visiting neighbors and going shopping, [Plaintiff] testified that he is able to let the dog out, wash dishes, prepare microwavable [sic] meals and do laundry. Although [Plaintiff] rated his pain as a six or seven, on a scale of one to ten, with ten being the most painful, he admitted that his prescribed pain medication, Oxycodone, provides some relief. In addition to causing stomach pain, [Plaintiff] stated that his medication makes him drowsy, and as a result he naps two to three times a week, for two to three hours at a time. In addition to napping, [Plaintiff] stated that he rests with his feet on an ottoman, at chair height, about three to five times a day, for 30-60 minutes each time. [Plaintiff] admitted that he was taking too much prescription pain medication, but stated that he now takes it as prescribed, which is two pills, three times a day. [Plaintiff] also acknowledged his history of substance abuse, but stated that he has not used illegal drugs since August 15, 1988 and has reduced his drinking to the weekends, when he typically consumes six beers a day.
>
> In a function report completed on May 4, 2012, [Plaintiff] admitted that he goes shopping and enjoys sitting outside. In addition to being independent in his personal care, [Plaintiff] is able to cook and go outside alone [R. at 234-44].

R. at 21-22; *see* R. at 36-53.

### 2.     VE Testimony

The VE testified that a hypothetical individual with Plaintiff's same age, education, and work experience with the RFC outlined below in Part III could not perform Plaintiff's past relevant work but could perform the unskilled, light[2] jobs of cashier, housekeeper, or fast-food worker. R. at 55-57. According to the VE, his testimony was consistent with the *Dictionary of Occupational Titles*.[3] R. at 57. No jobs would be available to someone who could only lift or

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." *Id.* §§ 404.1568(a), 416.968(a).

[3] "The Social Security Administration has taken administrative notice of the *Dictionary of Occupational Titles*, which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs." *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.8 (9th Cir. 2007);

carry up to ten pounds, could never climb or bend, and could only stand for one hour and walk for one hour in an eight-hour workday before needing to lie down or prop up his or her legs at waist level for two hours.  R. at 57-58.

## III

## Summary of ALJ's Decision

On September 24, 2014, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the amended onset date of disability of April 24, 2011;[4] and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was unable to perform his past relevant work; but (5) could perform other work in the national economy, such as a cashier, housekeeper, or fast-food worker.  R. at 17-26.  The ALJ thus found that he was not disabled "from April 1, 2009, through the date of [the] decision."  R. at 26.

In so finding, the ALJ found that Plaintiff had the RFC "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can occasionally climb ramps and stairs, stoop, balance, kneel, crouch and crawl, never climb ladders, ropes and scaffolds and he must avoid all exposure to hazards."  R. at 20-21.  The ALJ also considered Plaintiff's credibility and found that his "medically determinable impairments could reasonably be expected to cause the alleged

---

*see Pearson v. Colvin*, 810 F.3d 204, 205 n.1 (4th Cir. 2015); *DeLoatche v. Heckler*, 715 F.2d 148, 151 n.2 (4th Cir. 1983); 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1).  "Information contained in the [*Dictionary of Occupational Titles*] is not conclusive evidence of the existence of jobs in the national economy; however, it can be used to establish a rebuttable presumption."  *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993).

[4] The ALJ apparently amended the alleged onset date of disability to April 24, 2011, on the basis of Plaintiff's wage records.  R. at 17 (citing R. at 211-14).

symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." R. at 22. The ALJ found that Plaintiff's "activities of daily living are functional in that he is independent in his personal care, cooks, makes his bed, can climb stairs and goes shopping." R. at 22.

In considering the opinion evidence, the ALJ afforded "great weight" to the opinions of Drs. Najar and Singh, the state agency medical consultants. R. at 23. The ALJ gave "little weight" to Dr. Sullivan's July 2011 and April 2012 opinions because "Dr. Sullivan relied too heavily upon [Plaintiff's] subjective complaints and his opinion is not consistent with the record as a whole." R. at 24. The ALJ further found that "Dr. Sullivan failed to cite to any specific treatment or examination notes to support his assessment, which overstates [Plaintiff's] limitations." R. at 24.

IV

**Disability Determinations and Burden of Proof**

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

7

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.  20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003).  "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further."  *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The claimant has the burden of production and proof at steps one through four.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity.  If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities.  *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[5]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment.  If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled,

---

[5] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(b), 416.921(b).  These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.  *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

regardless of age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4).  RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.*  If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the

...

national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

V

**Substantial Evidence Standard**

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v.*

*Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## VI

### Discussion

Plaintiff contends that the ALJ erroneously assessed his RFC contrary to Social Security Ruling[6] ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996). Pl.'s Mem. Supp. Mot. Summ. J. 3-9, ECF No. 13-1 (citing, *inter alia*, *Fleming v. Barnhart*, 284 F. Supp. 2d 256, 271-72 (D. Md. 2003)). Plaintiff maintains that the ALJ failed to perform properly a function-by-function assessment of his ability to perform the physical and mental demands of work. *Id.* at 6. In particular, he contends that, although the ALJ found that his impairments limited his physical and mental abilities to do basic work activities, the ALJ failed to include any limitation related to these activities in his RFC assessment. *Id.* at 7. According to Plaintiff, substantial evidence thus does not support the ALJ's RFC assessment. For the reasons discussed below, Plaintiff's assertion is unavailing.

> SSR 96-8p explains how adjudicators should assess RFC and instructs that the RFC
> 
> "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations. "Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." The Ruling further explains that the residual functional capacity "assessment must include a narrative

---

[6] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

>discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."

*Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (alteration in original) (footnote omitted) (citations omitted). The Fourth Circuit has held, however, that a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Rather, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (quoting *Cichocki*, 729 F.3d at 177). The court in *Mascio* concluded that remand was appropriate because it was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did not address. *Id.* at 637.

Plaintiff contends that, although the ALJ found at step two that his impairments of osteoarthritis/degenerative joint disease of the knees, feet, and hands, bilaterally, were severe because they limited his ability to do basic work activities (R. at 17-18), the ALJ failed to include in the RFC assessment any limitation related to Plaintiff's abilities to stand or walk, to handle or finger objects, or to use his hands in any manner. Pl.'s Mem. Supp. Mot. Summ. J. 6-7, ECF No. 13-1. As noted in Part IV above, the Commissioner determines at step two of the five-step sequential evaluation process whether the claimant has a medically severe impairment or combination of impairments. "Step two of the sequential evaluation is a threshold question

with a de minimis severity requirement." *Felton-Miller v. Astrue*, 459 F. App'x 226, 230 (4th Cir. 2011) (per curiam). In other words, "the step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Yuckert*, 482 U.S. at 153-54, 107 S. Ct. at 2297-98). Thus, "[t]he findings that the [Commissioner] must make at steps two and four . . . are quite different." *Taylor v. Astrue*, Civil Action No. BPG-11-0032, 2012 WL 294532, at *8 (D. Md. Jan. 31, 2012). "At step four, on the other hand, the [Commissioner] must look to all the evidence on record and determine more precisely how, if at all, the claimant's impairments limit her ability to work." *Id.* "It is possible, therefore, for [the Commissioner] to find at step two that a claimant's condition is severe—because the medical evidence does not conclusively prove otherwise—and yet at step four find no substantial evidence that the condition actually limits the claimant's ability to work." *Id.* Thus, "an ALJ is not required to include a corresponding limitation for each severe impairment." *Copes v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-11-3487, 2013 WL 1809231, at *1 (D. Md. Apr. 26, 2013).

In any event, although the ALJ noted Plaintiff's history of suffering from degenerative joint disease/osteoarthritis of the knees, feet, and hands bilaterally, the ALJ found that the medical evidence did not support the severity of his allegations. R. at 22. Failing to identify any evidence of greater limitations resulting from his impairments that the ALJ should have included in the RFC assessment, Plaintiff has not demonstrated that his impairments limited him to a greater extent than the ALJ found. *See* Def.'s Mem. Supp. Mot. Summ. J. 10-11, ECF No. 14-1. Further, Plaintiff has not contested the ALJ's consideration of his credibility and weight given to the various opinions in assessing his RFC. *See id.* at 11-12. Because Plaintiff "has failed to point to *any* specific piece of evidence not considered by the Commissioner that might have

changed the outcome of his disability claim," his argument in this regard thus is unavailing. *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014).

In sum, substantial evidence supports the decision of the ALJ, who applied the correct legal standards here. Thus, Defendant's Motion for Summary Judgment is **GRANTED**, Plaintiff's Motion for Summary Judgment is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

## VII

### Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 14) is **GRANTED**. Plaintiff's Motion for Summary Judgment (ECF No. 13) is **DENIED**. The Commissioner's final decision is **AFFIRMED**. A separate order shall issue.

Date: June 15, 2016                                        /s/
                                                           Thomas M. DiGirolamo
                                                           United States Magistrate Judge